**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**JERILYN A. LUCAS,**

        **Plaintiff,**

        **v.**                                  **Case No. 05-C-0888**

**PYRAMAX BANK, FSB,**

        **Defendant.**

---

## DECISION AND ORDER

---

The plaintiff, Jerilyn A. Lucas ("Lucas") has brought suit against the defendant PyraMax Bank, FSB ("PyraMax") alleging that she was retaliated against and a victim of discrimination. Lucas further claims that PyraMax violated the Employee Retirement Income Security Act and the Family Medical Leave Act by terminating her employment to avoid paying certain benefits. Now before the Court are two expedited, non-dispositive motions filed by Lucas. The first, filed on June 1, 2006, seeks entry of a protective order and an order to quash a subpoena.[1] The second, filed on June 6, 2006, asks the Court to compel the production of certain documents requested in discovery.

---

[1] Civil Local Rule 37.1 contains a meet-and-confer requirement that must be satisfied before a party files a discovery motion. The wording of the rule requires such conferences prior to filing all "motions for discovery." The rule does not make clear whether "for discovery" means requests seeking information, or, more broadly implicates any motion related to discovery matters. The Court need not resolve this ambiguity related to Lucas's first motion for a protective order and to quash. The parties clearly are at an impasse and further dialogue would have proven fruitless.

I.      Motion for Protective Order and Order Quashing Subpoena

On May 9, 2006, Lucas's counsel, F. Thomas Olson ("Olson"), received an authorization request from Michele Ford ("Ford"), counsel for PyraMax. The authorization, directed to Nelson Tax Accounting, sought all records relating to Lucas and her finances. Olson responded to Ford, in a letter dated May 18, 2006, explaining that Lucas and her husband had filed joint tax returns. Lucas would produce the requested documents only if she were first permitted to redact information related to her husband's income and earnings. Though PyraMax did not respond to Lucas's proposal, Ford's legal assistant sent a letter to Olson, dated May 22, 2006, asking for the executed authorization. If the requested authorization was not received by May 26, 2006–the letter continued–PyraMax would file a motion to compel.

In response to the May 22nd letter, Olson sent Ford a letter dated May 25, 2006. In that letter, Olson stated that he had never received a response to his May 18th letter and requested additional information from PyraMax regarding its basis for requesting tax information from Lucas and her husband. No answer to Olson's letter was forthcoming, though he did receive a notice of deposition for Mark Nelson ("Nelson"), Lucas's corporate and tax advisor.

Lucas concedes that PyraMax is entitled to her post-termination salary history, but sees no reason to disclose information about her earnings from previous employers or information related to her husband's finances. Lucas argues that PyraMax has not

2

demonstrated a compelling need for the requested financial information.  At any rate, Lucas contends that there are less intrusive means to discover such information.

PyraMax responds that it is entitled to information about Lucas's income because she is claiming lost wages and benefits.  PyraMax seeks information about reported income and insurance benefits that Lucas received from J.L. Services, Inc., a corporation operated by Lucas and her husband.  At her deposition, Lucas could not recall various specifics related to her finances, including the amounts she paid herself over the last several years or the amounts she reinvested in her in lieu of receiving a salary.  Lucas acknowledged that she currently makes such decisions with Nelson.

PyraMax had requested that Lucas bring to her deposition documents related to her claims.  Lucas did not provide documents related to her lost income or benefits.  She suggested that Nelson Accounting may possess such documents.

Courts are reluctant to order disclosure of tax returns absent showings of relevancy and compelling need. *See Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (citing *SEC v. Cymaticolor*, 106 F.R.D. 545, 547 (S.D.N.Y. 1985)); *Aliotti v. Vessel Senora*, 217 F.R.D. 496, 497-98 (N.D. Cal. 2003); *Lemanik v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 609 (S.D.N.Y. 1989) (noting the public policy of confidentiality of tax returns; party seeking returns must establish relevancy and court must find compelling need because information is not otherwise available).

Lucas herself has answered any doubts about the relevancy of the information that PyraMax requests: Lucas's retained expert prepared a report of economic damages occasioned by Lucas's termination from PyraMax. To compile that report, the expert relied, in part, on "[t]he tax returns of John and Jerilyn Lucas for the years 2001-2005," which included "their W-2 statements, personal returns and two corporate returns for 2005." (6/7/06 Aff. of M. Ford, Ex. C, at 1.) Lucas cannot use such information, thereby implicitly acknowledging its relevance, and then limit her opponent's access to the same.

The Court's inquiry is not at an end, however. Though relevance has been established, Lucas states that the Court must next determine whether PyraMax has demonstrated a compelling need and inability to obtain the information through less intrusive means. The Court notes that this standard has not been explicitly articulated or adopted by the Seventh Circuit. (Lucas's brief invoking that standard does not contain any citations to this circuit or the district courts therein.) There is at least one instance of a district court in this circuit analyzing a request for production of tax returns and examining whether the requesting party established a compelling need with no alternative means of obtaining the same information. *See Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 564 (N.D. Ill. 1976).

The excerpts of Lucas's deposition testimony show that she cannot recall certain financial particulars, including her income for certain years. Yet, in her motion, Lucas suggests a deposition as a less intrusive way of obtaining the information that PyraMax seeks. In fact, that is the only "less intrusive" means that Lucas suggests. And, Lucas seeks

4

to protect Nelson from deposition. If Lucas cannot recall relevant financial information and her accountant will not provide it, PyraMax is placed in an untenable position. Lucas has suggested no other means for PyraMax to obtain the information it clearly needs.

In sum, the report of Lucas's expert and her request for lost wages and benefits have established the relevance of the information that PyraMax seeks. Lucas's suggestion that this information might be obtained via deposition has proven unavailing as far as the Court knows. (Obviously PyraMax could not obtain the information from Lucas's corporate tax adviser, Nelson, if the Court issued a protective order.) PyraMax has a compelling need for the information and no other way has been suggested to obtain it. Lucas's motion is denied.

II.     Motion to Compel Production

In her second motion, Lucas asks the Court to compel the production of certain documents or, at least, to direct the defendant "to identify . . . what it does not have that is responsive to the plaintiff's request or . . . why the requested materials cannot be produced." (Pl.'s Sec. R. 7.4 Expedited Non-Dispositive Mot. to Compel Prod. of Documents ["Second 7.4 Mot."] 1.)[2] In support of this motion, one of Lucas's attorneys, Olson has submitted an affidavit.

Olson avers that several months ago, Lucas asked for the production of certain documents from PyraMax. (Olson Aff. ¶ 3.) A second request for documents was served

---

[2] In her motion, Lucas claims that PyraMax's egregious conduct is best exemplified by its postponement of a scheduled deposition on the pretext that the deponent would be out of town on vacation. Lucas has provided an affidavit supporting her contention that PyraMax's representation was untrue. PyraMax, in its response, provides a facially plausible explanation for the confusion. The Court has paid little attention to this particular issue insofar as it does not seem germane to Lucas's central concern of the production of documents.

5

on February 10, 2006. (*Id.*) In March, Lucas filed a motion to compel that was denied by this Court for failing to show that she had complied with this Court's meet-and-confer requirements or otherwise made a good faith effort to resolve the purported dispute. On April 6, 2006, the date on which Lucas's motion was denied, Olson held a telephonic conference with PyraMax's attorneys. Based on that meeting, Olson composed a letter to opposing counsel, dated April 19, 2006, identifying outstanding document requests and explaining Lucas's justification for seeking the requested information. (*See* Olson Aff., Ex. A.) In that letter, Olson asked for a response to his requests by April 24, 2006 and the production of any outstanding documents by April 28th.

When PyraMax (or its attorneys) did not respond by April 24th, Olson, on April 25th, telephoned Ford, one of PyraMax's attorneys and, on May 3, 2006, Olson sent another letter to opposing counsel summarizing that conversation. Olson's letter indicates that Ford believed all requested documents had been produced. That same letter once again identified what Lucas understood to be outstanding requests. Finally, on May 8, 2006, Ford sent Olson a letter stating that she would send a subsequent missive addressing the points raised in his May 3, 2006 letter. (Olson Aff. ¶ 7.) Olson states that he never received the promised letter. (*Id.*)

Another letter from Olson followed on May 10, 2006. On May 11, 2006, Olson and opposing counsels conferred telephonically about the outstanding requests. During that call, defense counsel and a PyraMax representative stated that they would produce certain

6

outstanding documents, though, for many requests they stated that PyraMax had produced all responsive documents in its possession. Olson now claims that many of the promised materials still have not been produced. (*See* Olson Aff. ¶ 8.)

PyraMax has responded to Lucas's motion by saying that agreement has been reached on all issues of dispute. (*See* PyraMax Bank's Br. in Resp. to J. Lucas' R. 7.4 Expedited Mot. to Compel Prod. of Documents and Request for Costs and Fees 2.) Since the May 10, 2006 conference, PyraMax has produced "additional documents . . . and policies and redaction of the personnel file of one of PyraMax' [sic] employees has been underway so that these files may be produced." (*Id.*) PyraMax also states that a written memo of the parties' agreements related to these discovery disputes will be sent to Lucas shortly, though it simply embodies what the parties have verbally agreed to. (*Id.* at 2-3.) In fact, PyraMax states that "the only item which remains to be given to Lucas' counsel is Attorney Ford's memo–itself not a document subject to Rule 26." (*Id.* at 3.)

The Court cannot fully determine what has transpired between the parties. For example, Lucas's response contains conflicting messages. Lucas represents that "redaction of the personnel file of one of PyraMax' [sic] employees has been underway so that the files may be produced." This statement clearly suggests that the described files have *not yet been produced*. Yet, one paragraph later in her responsive brief, Lucas states that the memo memorializing the parties' agreements is "the only item which remains to be given to Lucas's counsel . . . ." These two statements cannot both be true.

7

Olson's affidavit, dated June 5, 2006, states that PyraMax agreed to produce the personnel files of Jorge Fernandez and "Kimberly," a PyraMax employee. Lucas's response implies that only one employee file is being produced. The Court does not know if this reduction was pursuant to an agreement between the parties or if PyraMax is simply reneging on a former promise to produce both files. Likewise, the Court does not know if PyraMax has responded to those other inquiries identified in Olson's affidavit, either by stating that it possesses no such documents or providing some other explanation for their failure to be produced. This much is certain: Certain requests are outstanding. If all of the items identified in Olson's affidavit had been addressed, Lucas would have undoubtedly withdrawn her motion to compel.[3]

There has clearly been a narrowing of outstanding discovery issues–presumably as PyraMax has progressively satisfied Lucas's requests. Multiple items were identified as outstanding in Olson's April 19, 2006 letter to opposing counsel. Fewer issues are identified in Olson's May 3, 2006 letter. And, even fewer issues are outstanding as set forth in Olson's affidavit of June 5, 2006. In that affidavit, Olson identifies 7 outstanding requests. The Court understands that these remaining items are the only matters presently at issue before the Court. And, there does not seem to be any argument that the documents should be

---

[3] Lucas's filing of her motion would seem to negate PyraMax's representation that there is agreement on all previous points of contention between the parties. PyraMax attempts to claim that Lucas's only concern now may be PyraMax's delay in the production of the remaining outstanding documents or written memo. Even so, Lucas's concern is legitimate given the apparent difficulty she has encountered in obtaining complete and timely responses from Pyramax.

produced or the requested information provided. The question, though not answered by Pyramax, is *when* that information will be forthcoming. Based on the parties' varying representations, the Court does not know definitively what has, and has not, been produced. The Court, by setting a deadline for PyraMax to respond to those remaining discovery requests, crafts a remedy that satisfies Lucas's need for the information and precludes future dilatory conduct by PyraMax.

The Court must still address Lucas's request for fees and costs incurred in bringing her motion. Rule 37(a)(4) of the Federal Rules of Civil Procedure provides for attorney fees and costs if a motion to compel is granted. *See* Fed. R. Civ. P. 37. That Rule, however, also recognizes that various circumstances may not warrant such an award. In the present instance, the Court is confronted with contradictory factual assertions in the parties' affidavits and briefs regarding which requests are still outstanding. The Court is reluctant to award fees and costs where credibility determinations are required to fully determine the factual circumstances of the parties' disputes–if there is even such a dispute at this time. The Court, assuming PyraMax's version of events, does not know when certain documents or responses were provided. Without a more complete understanding of what has actually transpired, the Court will not award Lucas her fees or expenses.

9

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

Plaintiff's Rule 7.4 Expedited Non-Dispositive Motion for Protective Order and Order Quashing Subpoena (Docket No. 43) is **DENIED**.

Plaintiff's Second Rule 7.4 Expedited Non-Dispositive Motion to Compel Production of Documents (Docket No. 44) is **DENIED** in part and **GRANTED** in part. PyraMax **SHALL** produce documents responsive to any outstanding discovery requests and/or otherwise respond to the same by stating that they do not have such documents or have already produced all available responsive documents, no later than June 23, 2006. Lucas's request for attorney fees and costs incurred in bringing her motion is **DENIED**.

Dated at Milwaukee, Wisconsin this 15th day of June, 2006.

        **BY THE COURT**

        s/ Rudolph T. Randa
        **Hon. Rudolph T. Randa**
        **Chief Judge``**